IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FLETCHER MACHINE COMPANY, | ) | |
| INC., MARION RAY FLETCHER, | ) | |
| and CAROLYN Y. SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:09CV160 |
| | ) | |
| TRENT CAPITAL MANAGEMENT, | ) | |
| INC., and LEGGETTE & COMPANY, | ) | |
| INC. d/b/a LEGGETTE ACTUARIES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on the motion of Defendant Leggette & Company (Leggette) to stay and to compel arbitration. (Docket No. 18.) The motion has been fully briefed, and the Court heard argument on the motion on October 20, 2009. For the reasons stated herein, the Court recommends that Defendant Leggette's motion to compel arbitration be granted as to Fletcher Machine Company's claims against Leggette, and otherwise denied, and that this action be stayed for six months to afford Plaintiff Fletcher Machine Company the opportunity to initiate the arbitration process against Leggette.

A.      **Facts and Claims**

Plaintiff Fletcher Machine Company (Fletcher Machine) was a corporation that manufactured woodworking equipment. (Docket No. 7, First Amended Complaint ("1st Am. Compl.") ¶ 8; Docket No. 20, Def. Leggette's Br. in Supp. of Mot. to Stay and to Compel Arbitration, at 1.)  It also was the plan sponsor and plan administrator of the Fletcher Machine Co., Inc. Savings and Retirement Plan (the "plan"), an ERISA plan.  (1st Am. Compl. ¶ 1; Docket No. 20 at 1.)  The two individual Plaintiffs, Marion Ray Fletcher and Carolyn Y. Smith, were plan participants.  (1st Am. Compl. ¶¶ 2-3; Docket No. 20 at 1.)  In July 2008, Fletcher Machine sold its assets and terminated all of its employees.  (1st Am. Compl. ¶ 14; Docket No. 20 at 1.)  This action arises out of the termination of the plan later in 2008.  Plaintiffs allege that Defendants delayed liquidating the plan assets to cash which resulted in a loss in excess of $100,000.  (1st Am. Compl. ¶¶ 28-32.)

In March 2003, Fletcher Machine and Leggette entered into a "Recordkeeping Services Agreement" in connection with Fletcher Machine's plan.  (Docket No. 18, Ex. 1.)  This agreement enumerates twenty tasks that Leggette would perform on behalf of the plan.  (*Id*.) Plaintiffs contend that Leggette exercised discretionary control over the plan assets in connection with the plan termination in the Fall of 2008 and thereby became plan fiduciaries.  (1st Am. Compl. ¶¶ 11, 13.)  Plaintiffs further contend that Leggette breached its fiduciary duties in connection with the termination of the plan.  (*Id*. ¶¶ 45-46.)  Leggette denies these allegations, denies that it was an ERISA fiduciary, and further contends that its conduct was

limited to the ministerial tasks enumerated in the contract. (Docket No. 22, Answer.) The other Defendant, Trent Capital Management, Inc. (Trent), was the investment advisor for the plan. (1st Am. Compl. ¶ 12.)

The Fletcher Machine-Leggette recordkeeping agreement (the "agreement") contains an arbitration clause. (Docket No. 18, Ex. 1.) The parties agree to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof." (*Id*. at 5.) The arbitration is to be administered by the American Arbitration Association in accordance with its rules. (*Id*.) The place of the arbitration is to be Dallas County, Texas. (*Id*.) The parties may enforce their rights to arbitration in any court of competent jurisdiction. (*Id*.)

Plaintiffs' First Amended Complaint raises six causes of action. (Docket No. 7.) The causes of action against Trent (Claims 1 and 6) are not at issue in this motion. Plaintiffs' second cause of action is by all Plaintiffs against Leggette for its alleged breach of fiduciary duty pursuant to 29 U.S.C. § 1104. (*Id*. at 11-13.) Plaintiffs' third cause of action is by Fletcher Machine against Leggette for breach of the recordkeeping agreement. (*Id*. at 13.) Plaintiffs' fourth cause of action is by Fletcher Machine against Leggette for professional negligence and malpractice. (*Id*. at 13-14.) Finally, Plaintiffs' fifth cause of action is by all Plaintiffs against Leggette for negligent misrepresentation. (*Id*. at 14-15.)

**B.**	**Governing Law**

The Federal Arbitration Act provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

In addition, 9 U.S.C. § 3 provides that if suit is brought in federal court "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court upon being satisfied that the issue involved in the suit is referable to arbitration under the agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

If an action involves both arbitrating and non-arbitrating parties, the decision whether to stay litigation among the non-arbitrating parties pending the outcome of the arbitration is left to the court's discretion in controlling its docket. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.22 (1983).

**C.     Analysis**

    **1.     Arbitration of Claims of Fletcher Machine**

Fletcher Machine raises four claims against Leggette. These are: (1) the second cause of action for breach of fiduciary duty under ERISA; (2) the third cause of action for breach of the recordkeeping agreement; (3) the fourth cause of action for professional negligence

and malpractice; and (4) the fifth cause of action for negligent misrepresentation. (1st Am. Compl.)

Fletcher Machine is a signatory to the recordkeeping agreement containing the arbitration clause with Leggette. (Docket No. 18, Ex. 1.) The parties agreed to arbitrate "[a]ny controversy or claim arising out of or relating to" the agreement. (*Id* at 5.) Fletcher Machine does not contend that its claims do not arise out of or relate to the recordkeeping agreement. (*See* Docket No. 27, Pls.' Resp. in Opp'n to Def. Leggette's Mot. to Compel Arbitration.) Rather, it argues first that the provision of the arbitration clause requiring arbitration in Dallas County, Texas causes the clause to be void and unenforceable. (*Id*. at 4-10.) Fletcher Machine contends that the "analysis of an arbitration clause designating a specific arbitration forum is treated like any other forum selection clause." (*Id*. at 4-5.) It relies upon *James C. Greene Co. v. Great Am. E & S Ins. Co.,* 321 F. Supp. 2d 717 (E.D.N.C. 2004), in which the court applied the tests developed to determine if forum selection clauses in general are unreasonable under the circumstances. (*Id*. at 721.) This approach has been rejected because unlike the run-of-the-mill forum selection clause, a choice of forum to arbitrate "has the additional force of the Congressional imprimatur found in" the Federal Arbitration Act. *See Sam Reisfeld & Son Imp. Co. v. S.A. Eteco*, 530 F.2d 679, 680-81 (5th Cir. 1976) (the *Bremen* unreasonableness test inapplicable to arbitration clauses); *Al-Salamah Arabian Agencies Co. v. Reece*, 673 F. Supp. 748, 751 (M.D.N.C. 1987) (The "'unreasonableness of situs' cases relied upon by plaintiffs are inapplicable in determining

the enforcibility [sic] of arbitration clauses."); *Spring Hope Rockwool, Inc. v. Indus. Clean Air, Inc.*, 504 F. Supp. 1385, 1389 (E.D.N.C. 1981) (rejecting inconvenience argument and applying exclusively provisions of Arbitration Act requiring enforcement of arbitration provision unless arbitration clause itself is voidable for fraud, coercion, or such grounds as exist at law or in equity for the revocation of any contract).

The arbitration agreement at issue is valid and enforceable unless Fletcher Machine shows "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Fletcher Machine's arguments attempting to show that the forum selection clause is inconvenient and unfair fail to establish a ground to revoke the contract. The Supreme Court has stated, by way of example, that "an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974). There is no such showing by Fletcher Machine in this case. Accordingly, the Court rejects Fletcher Machine's argument that the selection of the forum for arbitration in Texas causes the arbitration clause to be void and unenforceable.

Fletcher Machine also argues that it is not required to arbitrate its fiduciary breach claims against Leggette because it signed the recordkeeping agreement as plan sponsor rather than as plan administrator. (Docket No. 27 at 10-12.) The plan sponsor is not a fiduciary as is the plan administrator, according to Fletcher Machine, and therefore it "is not obligated to arbitrate any claim with regard to fiduciary breach as Plan Sponsor because it has no such

claim." (*Id*. at 11.) The logic of this argument is troublesome because it is Fletcher Machine's claim of fiduciary breach against Leggette that is potentially subject to arbitration. Nevertheless, the Court finds that Fletcher Machine was acting as a fiduciary when it contracted with Leggette to become the recordkeeper of the plan.

Fletcher Machine's argument that it was not a fiduciary when contracting with Leggette is based upon the first paragraph of the recordkeeping agreement which shows that Fletcher Machine is contracting with Leggette as the "plan sponsor," and upon the signature line of the agreement which shows that Carolyn Smith signed the agreement for "Fletcher Machine Company, Inc. Plan Sponsor." (*Id.* at 10; Docket No. 18, Ex. 1 at 7.) However, it is well-settled that whether a party is acting as a fiduciary depends not upon how it believes it is acting but upon whether it is making fiduciary decisions. *See, e.g., Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) (employer-fiduciary must wear fiduciary hat when making fiduciary decisions).

Under 29 U.S.C. § 1002(21)(A), a person is a fiduciary "to the extent" that he "exercises any discretionary authority or discretionary control respecting" plan management or exercises any authority or control respecting management or disposition of plan assets, or "he has any discretionary authority or discretionary responsibility in the administration of such plan." In *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996), the Fourth Circuit found that the employer/plan sponsor acted as a fiduciary when it appointed separate entities as the plan administrator and plan supervisor and retained the power to

appoint, retain, and remove plan fiduciaries. Similarly, in this case Fletcher Machine acted as a fiduciary when it exercised its discretion to contract with Leggette[1] to be responsible for plan recordkeeping. *See Larson v. Northrop Corp.*, 21 F.3d 1164, 1169 (D.C. Cir. 1994) (process of choosing an annuity contract to insure pension fund's termination is fiduciary function). Pursuant to the recordkeeping contract, Fletcher Machine retained the power to remove Leggette as the plan recordkeeper. (Docket No. 18, Ex. 1 at 4 "Term of Engagement.")

Accordingly, Fletcher Machine should be held to its agreement to arbitrate all of its claims against Leggette. *See* 9 U.S.C. § 3.

### 2. Arbitration of Claims of Marion Ray Fletcher and Carolyn Y. Smith

The individual Plaintiffs, Marion Ray Fletcher and Carolyn Y. Smith, are nonsignatories to the Fletcher Machine-Leggette recordkeeping agreement.[2] The analysis of whether Mr. Fletcher and Ms. Smith should have to arbitrate their claims for breach of

---

[1] Plaintiffs allege in their Complaint that Leggette was a fiduciary of the plan. (1st Am. Comp. ¶ 11.)

[2] Carolyn Smith signed the agreement for Fletcher Machine, and there is no indication in the contract or elsewhere that she signed in an individual capacity or that she assumed in the contract individual obligations. *See Whitney Nat'l Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, Civil Action No. H-04-2220, 2006 WL 3741903, slip op. at *4-*5 (S.D. Tex. Dec. 15, 2006) (stating Texas law (pursuant to which Fletcher Machine and Leggette agreed the recordkeeping agreement would be construed) does not impose corporate obligations on individual who signed only in corporate capacity).

fiduciary duty and negligent misrepresentation against Leggette therefore differs from the analysis employed for Fletcher Machine.

"Generally, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed' to arbitrate." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n,* 384 F.3d 157, 160 (4th Cir. 2004) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000)). A party may agree to submit to arbitration by means other than personally signing an arbitration clause, however. *R.J. Griffin*, 384 F.3d at 160. This occurs when "'theories arising out of common law principles of contract and agency law' are used to bind nonsignatories to arbitration agreements." *Id*. (quoting *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

Leggette argues that estoppel is "one of several" theories which require arbitration in this case.³ (Docket No. 31, Def. Leggette's Reply Br. in Supp. of Motion to Stay and to Compel Arbitration, at 3.) Under this theory, Leggette contends that because the individual Plaintiffs received a direct benefit from the recordkeeping agreement, specifically Leggette's performance of the enumerated tasks in the agreement, Plaintiffs are estopped from denying the applicability of the arbitration clause in the agreement. (*Id*. at 4.) Leggette also argues that the incorporation into the underlying facts of the obligation of Leggette to initiate

---

³ Leggette does not identify these other theories, however. (Docket No. 31 at 3.)

distributions the day after an application was received shows that Plaintiffs are seeking a benefit under the contract.[4] (*Id*. at 4-5.)

In *Griffin*, the general contractor of a condominium complex filed suit in federal court to force the condominium homeowners' association into arbitration on claims of defective construction that the association had sued on in state court. The owner of the condominium complex had entered into an agreement with the contractor for construction of the condominiums, and this agreement contained an arbitration clause. However, the homeowners' association was not a party to that contract. 384 F.3d at 159. In arguing for arbitration, the contractor relied on the fact that the contract provided a part of the factual foundation for the complaint of the homeowners' association. *Id*. at 161. The contractor contended that this showed that the nonsignatory association was seeking a direct benefit from the contract and therefore should be bound by the arbitration clause. *Id*. However, the Fourth Circuit disagreed. It found that the association made two claims against the contractor: for negligence in constructing the condominiums and for breach of the implied warranty of good workmanship. *Id*. at 162. Neither of these causes of actions was dependent on the terms of the general contract. *Id*. The court acknowledged that the formation of the contract benefitted the association, however, because the "basis for the" association's claims

---

[4] Leggette also points out that the third cause of action is a claim for breach of the recordkeeping agreement. (Docket No. 31 at 4.) However, because only Fletcher Machine asserts that claim, it is not a basis to force the individual Plaintiffs into arbitration.

was not the contract, the association was not seeking a direct benefit from the contract. *Id*. Moreover, the inclusion of a discrete allegation in the complaint based on the contract, that the contractor failed to follow the plans and specifications set forth in the contract, failed to show that the association was seeking a direct benefit. *Id*. at 163. The doctrine of equitable estoppel could not be used to force the association to arbitrate its claims. *Id*. at 164.

The reasoning of *Griffin* precludes Leggette's argument that Plaintiffs claimed a direct benefit from the recordkeeping agreement by alleging in their Complaint that Leggette was obligated to begin distributions the day after an application was received. In addition, *Griffin* shows that any benefit received by the individual Plaintiffs pursuant to the record-keeping agreement was only an indirect benefit. The bases for the Plaintiffs' claims are not the contract. Rather, the bases are ERISA and the tort of negligent misrepresentation. Therefore, the individual Plaintiffs are not seeking a direct benefit from the recordkeeping agreement, and they cannot be forced into arbitration under a theory of equitable estoppel.

Leggette also argues that opinions from five circuit courts (outside of the Fourth Circuit) "mandate that these actions are brought by the named plaintiffs on behalf of the class of unnamed participants in the ERISA plan," and therefore the signature of the plan fiduciary on the contract is sufficient to bind the nonsignatory Plaintiffs. (Docket No. 31 at 5-6.) Even if under case law from other circuits the nonsignatory Plaintiffs could be bound to arbitrate, this court must follow the Fourth Circuit's case law which, as shown by *Griffin,* does not force these Plaintiffs to arbitrate.

In addition, the cases relied upon by Leggette do not convince this Court that the individual Plaintiffs should be required to arbitrate. In *Williams v. Imhoff*, 203 F.3d 758, 760 (10th Cir. 2000), each plaintiff had signed a form which contained an arbitration clause. Therefore, that case does not inform the decision whether nonsignatories should be bound by an arbitration agreement. In *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475 (8th Cir. 1988), the court considered whether "Sulit can litigate ERISA claims relating to the pension and profit sharing accounts in federal court despite the fact Sulit signed agreements requiring arbitration of those claims." *Id*. at 477. This case also fails to inform the decision whether nonsignatories should be forced to arbitrate. In *Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996), Dr. Kramer had signed customer agreements with Smith Barney which contained arbitration clauses. *Id*. at 1082. He was suing as an individual and as trustee of two pension plans for the benefit of himself and his employees. *Id*. The court does not discuss whether a nonsignatory should be bound by the arbitration clauses.

In *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993), the plaintiff trustees of a pension sharing plan sued Merrill Lynch and related entities. The trustees had signed agreements containing arbitration clauses with Merrill Lynch when it opened cash management accounts. *Id*. at 1112. Belinda Stewart was a Merrill Lynch financial consultant named also as a defendant. The court first concluded that Stewart was bound by Merrill Lynch's arbitration agreement because as its employee Stewart was

"integral to, if not directly responsible for, the alleged statutory violations of the principal corporation." *Id*. at 1122. Second, the court found that claims against Merrill Lynch Asset Management, the corporate sister and possible alter ego of Merrill Lynch, Pierce, Fenner & Smith, fell within the scope of the arbitration agreement. *Id*. Neither of these theories for holding nonsignatories to an arbitration agreement is applicable in this action.

Finally, Leggette relies upon *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116 (2d Cir. 1991). In that action, the court found that the nonsignatory, individual plan participant plaintiff should be required to arbitrate her claims because her interests and claims were "essentially identical" to those of the signatory and, under such circumstances, requiring her to arbitrate did "not work an injustice." *Id*. at 121. That was the extent of the court's discussion of the decision to require the nonsignatory to arbitrate. The court did not discuss whether the nonsignatory was receiving or seeking a direct or indirect benefit under the agreement containing the arbitration clause, as the Fourth Circuit examined in *Griffin*. Therefore, *Bird* does not persuade the Court that Mr. Fletcher and Ms. Smith should be required to arbitrate their claims against Leggette.

### 3. Stay of Case

Because if this Recommendation is accepted, this case will include both arbitrating and non-arbitrating parties, the decision whether to stay the non-arbitrable claims is left to the court's discretion. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 n.22. This action should

be stayed for six months from the date of an Order accepting this Recommendation. After that period, the parties should be required to provide updates to the Court every 60 days.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant Leggette & Company's motion to stay and to compel arbitration (Docket No. 18) be granted in part as set out above, and that this action be stayed for six months.

/s/ P. Trevor Sharp<br>
United States Magistrate Judge

Date: February 9, 2010